# ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

1. I, David J. Shuey II, a Special Agent (SA) of the Federal Bureau of Investigation (FBI), having first been duly sworn, depose and state as follows:

2. Your Affiant makes this Affidavit in support of an application for a warrant to search and seize the following property further described in Attachment A, for certain things particularly described in Attachment B, incorporated herein by reference:

   a. Three Flower Patterned Luggage, including contents;

   b. One black colored Swiss Gear Duffle Bag, including contents;

   c. One black colored Ricardo Luggage P&R#8257E72, including contents;

   d. One High Pack Luggage with Misty Miller American Airlines Ticket tag, including contents;

   e. iFLY brand, gray & black colored bag with P&R#80062D, including contents;

   f. One black colored Rolite Luggage w/ small padlock with P&R#6EAC66, including contents;

   g. One brown Cardboard Box with P&R6BEED9, including contents;

   h. One Ricardo Beverly Hills Luggage (Dante Grazzani), including contents;

   i. One small plastic bag (ROCKY MOUNTAINEER.COM), including contents;

Hereinafter referred to as "LUGGAGE".

## BACKGROUND OF AFFIANT

3.      Your affiant, David J. Shuey II, is a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since May 2018. I am currently assigned to the Criminal Enterprise/OCDETF (Organized Crime Drug Enforcement Task Force) Squad of the Phoenix Division, Tucson Resident Agency of the FBI. My duties include the investigation and apprehension of individuals engaging in narcotics trafficking and money laundering.

4.      I received twenty weeks of training at the FBI Academy in Quantico, Virginia. During that training, I learned how narcotics traffickers conduct their illegal activity; that is, how controlled substances are manufactured, consumed, packaged, marketed and distributed. I also was trained regarding racketeering, control and/or participation in criminal enterprise, and tracing monies and assets gained by drug traffickers from the proceeds of illegal sales of drugs (i.e., the laundering of monetary instruments), and conspiracy to commit any of these crimes.

5.      As a Special Agent with the FBI, I have performed various tasks, including, but not limited to: (a) participating in physical surveillance, and observing and recording movements of persons trafficking in illegal drugs, and those suspected of trafficking in illegal drugs; (b) interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of drugs; (c) participating in investigations involving the utilization of court-authorized electronic surveillance; and (d) supervising, as a co-case agent, specific investigations involving the trafficking of drugs and laundering of monetary instruments.

As an FBI Special Agent assigned to the Criminal Enterprise/OCDETF Task Force, I primarily investigate large-scale drug traffickers and money laundering organizations.

6. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug trafficking distribution networks. I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, internet, pagers, coded communications, and slang-filled conversations, false and fictitious identities and other means to facilitate their illegal activities and mislead law enforcement investigations.

7. Over the course of my experience in law enforcement, I have learned that individuals involved in narcotics trafficking:

   a. will travel on public transportation that avoids inspection of luggage or other closed containers.

   b. physically handle and count money after receiving it in exchange for narcotics, thereby leaving residue traces of controlled substances on the money;

   c. maintain, use or employ firearms and ammunition in connection with their narcotics trafficking activities;

   d. use all the available features of electronic devices such as cellular telephones, including using third-party messaging applications such as

WhatsApp or Facebook, to facilitate communication between and among criminal associates and to document their criminal activities, e.g., by sending messages about and taking photographs and video of narcotics, bulk currency, firearms, and other involved persons, vehicles, and locations; often such electronic evidence will contain embedded metadata that reveals the dates, times, and locations (e.g., GPS coordinates) of criminal activity;

8. This Court has jurisdiction to issue the requested warrants because it is a court of competent jurisdiction as defined by Rule 41(b) of the Rules of Criminal Procedure.

9. In preparing this Affidavit, your Affiant has conferred with other Special Agents, Task Force Agents, and Law Enforcement Officers, for which the opinions stated below are shared. Furthermore, your Affiant has personal knowledge of the following facts or have been told them by the persons mentioned below. The statements contained herein are based in part on information provided to your Affiant by Special Agents of the FBI, Tucson Police Department, and other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; and seizures of controlled substances and U.S. currency. Your Affiant also relies on his experience, training and background as a Special Agent with the FBI in evaluating this information. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the authorization for a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the required probable cause for a search warrant.

## INVESTIGATIVE SUMMARY

10. On October 4, 2021 Counter Narcotics Alliance (CNA), were conducting an investigation at the Amtrak station in Tucson, Arizona located near 400 North Toole Avenue, in Tucson, Arizona. The agents were conducting routine interdiction and follow up in reference to tips that had been received from Amtrak. Aside from the tips agents received who were conducting the referenced Amtrak interdiction operation, agents regularly speak to passengers traveling through Tucson regarding any information passengers would provide to agents for suspicious activities observed during their travels.

11. On the same day an officer involved shooting occurred on board the Amtrak Train. Subsequent to the shooting passengers who were onboard the train were removed from the train. However, all passenger and crew belongings and LUGGAGE remained on the train. The FBI Evidence Response Team (ERT) arrived on scene to process the officer involved shooting scene. Subsequent to arriving on scene FBI obtained consent from Amtrak to process the train for evidence related to the shooting. On October 5, 2021, all of the LUGGAGE from the train cars which was not believed to be involved in the officer involved shooting, was removed and placed on the Amtrak train station platform.

12. On October 5, 2021, at approximately 10:30 AM, Officer Gabriel Tapia and Marana Police Department and his K-9 performed an open-air sniff on the LUGGAGE removed from train car 31045. Officer Tapia's K-9 is trained and certified to detect the odors of marijuana, methamphetamine, cocaine and heroin. The LUGGAGE from train car 31045 was placed in a cleared area for examination by FBI ERT. Officer Tapia informed agents his K-9 alerted on 10 pieces of LUGGAGE described in Attachment A, indicating

7

the presence of narcotics or a controlled substance, or other evidence with an odor of narcotics or a controlled substance within the LUGGAGE.

13. On the same day at approximately 1:00 PM, K-9 Sergeant Kelly with the Pima County Sheriff's Office and his K-9 also performed an open-air sniff on the LUGGAGE removed from train car 31045. Sergeant Kelly's K-9 is trained and certified to detect the odors of marijuana, methamphetamine, cocaine, heroin and fentanyl. Sergeant Kelly informed agents his K-9 alerted on one additional piece of LUGGAGE, detailed in Attachment A, indicating the presence of narcotics or a controlled substance, or other evidence with an odor of narcotics or a controlled substance within the LUGGAGE.

14. In conclusion a total of 11 pieces of LUGGAGE that were removed from train car 31045 resulted in a positive alert from the aforementioned K-9s, indicating the presence of narcotics or a controlled substance, or other evidence with an odor of narcotics or a controlled substance within the LUGGAGE.

15. Special Agents from the FBI and personnel from the TPD are currently at the Amtrak Station in Tucson, Arizona, and ERT is continuing to process the crime scene. Based on this, your affiant requests authorization to execute this warrant at any hour.

## CONCLUSION

16.     Based on the facts and circumstances stated above, your Affiant asserts that there is probable cause to believe that Amtrak passengers, and others known and unknown have knowingly violated, or attempted to violate Title 21, United States Code, Sections 841 and 846.  Your Affiant respectfully submits that there is probable cause to believe that now located within the aforementioned property described in Attachment A is evidence, fruits, and instrumentalities of criminal offenses against the United States.

17.     Therefore, your Affiant respectfully requests that a search warrant be issued authorizing the Federal Bureau of Investigation, with appropriate assistance from other law enforcement officers, to search and seize the property, as described more fully in Attachment A, for the items more specifically described in Attachment B.

SHUEY II.DAVID.J.H31V29E18
Digitally signed by SHUEY II.DAVID.J.H31V29E18
Date: 2021.10.05 17:30:25 -07'00'

DAVID J. SHUEY II
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed telephonically this ____5th____ day of October, 2021.

*Leslie A. Bowman*
HONORABLE Leslie A. Bowman
United States Magistrate Judge

# ATTACHMENT A
## DESCRIPTION OF PREMISES TO BE SEARCHED AND SEIZED

a.  Three Flower Patterned Luggage, including contents;

b.  One black colored Swiss Gear Duffle Bag, including contents;

c.  One black colored Ricardo Luggage P&R#8257E72, including contents;

d.  One High Pack Luggage with Misty Miller American Airlines Ticket tag, including contents;

e.  iFLY brand, gray & black colored bag with P&R#80062D, including contents;

f.  One black colored Rolite Luggage w/ small padlock with P&R#6EAC66, including contents;

g.  One brown Cardboard Box with P&R6BEED9, including contents;

h.  One Ricardo Beverly Hills Luggage (Dante Grazzani), including contents;

i.  One small plastic bag (ROCKY MOUNTAINEER.COM), including contents;